UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLVO FINANCIAL SERVICES, | No. 2:21-cv-1568-TLN-KJN |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | (ECF No. 12.) |
| GLOBAL FREIGHT MANAGEMENT, INC., et. al., | |
| Defendant. | |

Presently pending before the court is plaintiff's motion for default judgment against defendants Global Freight Management, Inc., a California corporation, and Aleksandr Timofey in his individual capacity.[1]  To date, defendants have not opposed plaintiff's motion or otherwise made an appearance in this action.

The undersigned RECOMMENDS plaintiff's motion for default judgment be GRANTED IN FULL, and that plaintiff be awarded final judgment in the amount of $348,577.35 in compensatory damages, plus prejudgment interest in the amount of $174.29 per day beginning June 18, 2020 through the date of the judgment.

///

///

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72.

1

1

2

## I.       BACKGROUND

### Facts from the Complaint[2]

Around July 14, 2017, defendant Global Freight Management, Inc. ("GFM") executed a credit sales contract ("2017 contract") with Young's Truck Center to finance and purchase two tractors for $113,261.82.  (ECF No. 1 at 2, citing ECF No. 1-1.)  The 2017 contract required GFM to make 42 monthly installment payments.  (Id.)  On the same day, Young's Truck Center assigned all of its interest in the 2017 contract and the tractors to plaintiff.  (Id., citing ECF No. 1-2.)

Around January 29, 2018, GFM executed a Master Loan and Security Agreement and Promissory Note, and Schedule thereto, ("2018 contract") with plaintiff to finance and purchase five tractors for $726,960.80.  (ECF No. 1 at 3-4, citing ECF No. 1-4.)  The 2017 contract required GFM to make 48 monthly installment payments to plaintiff.  (Id.)  On the same day, defendant Aleksandr Timofey executed a Continuing Guaranty to guarantee the payment and performance of all of GFM's current and future obligations to plaintiff.  (Id., citing ECF No. 1-5.)

GFM and plaintiff modified the payment and interest rates of the 2017 contract around April 15, 2019, and the 2018 contract around April 23, 2019.  (ECF No. 1 at 2, 4 citing ECF Nos. 1-3, 1-6.)  Provisions under both contracts entitled plaintiff to accelerate and demand the entire balance due and take immediate possession of the tractors in the event of GFM's default.  (Id., citing ECF Nos. 1-1, 1-3, 1-4, 1-6.)

Defendants failed to make payments and defaulted on the 2018 contract on October 16, 2018, and the 2017 contract on March 19, 2020.  (ECF No. 12 at 13, 15.)  Plaintiff provided defendants notice on August 19, 2020, of the default payment and intent to repossess and sell the tractors.  (See ECF Nos. 12-4, 12-9.)  Plaintiff accelerated the balance due and sold the tractors under both contracts on August 31, 2020, for the collective price of $165,872.00.  (ECF Nos. 1 at 4, 12 at 14-16, citing ECF Nos. 12-4; 12-9.)

Plaintiff asserts it has performed all of its obligations under the contracts, and despite the

_____

[2] All facts derive from plaintiff's complaint and attached exhibits unless otherwise noted.  (See ECF No. 1.)

2

1  demands for payment, the outstanding balance remains due.  (ECF No. 1 at 3-5.)  Plaintiff alleges

2  it is entitled to compensatory damages, pre- and post-judgment interest, attorneys' fees, and costs

3  incurred in enforcing and collecting both balances.  (Id.)  Plaintiff contends that as of this lawsuit,

4  GFM owes a principal sum of $33,924.27 for the 2017 contract and $314,653.08 for the 2018

5  contract, not including continuing interest, late fees, and attorneys' fees and costs.  (Id.)

6  **Procedural Posture**

7  On August 31, 2021, plaintiff brought this diversity action against defendants for breach

8  of contract.  (See ECF No. 1.)  Plaintiff alleges it has complied with its obligations under the

9  contracts and has been damaged by defendants' failures to make payments in accordance with the

10  agreed upon payment schedules.  (Id. at 4-5.)

11  Plaintiff's complaint and summons were personally served on GFM and Timofey on

12  October 4, 2021, at defendants' address.  (See ECF Nos. 6, 7.)  Defendants failed to answer or

13  otherwise respond, and so plaintiff requested the clerk enter default under Rule 55(a),[3] which the

14  clerk did on December 21, 2021.  (ECF Nos. 8, 9.)  Thereafter, plaintiff moved for default

15  judgment against both defendants under Rule 55(b), noticing the motion for a hearing on August

16  4, 2021.  (ECF Nos. 12, 14.)  Neither defendant responded, but out of an abundance of caution the

17  undersigned vacated the hearing and permitted defendants one final opportunity to respond.  (See

18  ECF No. 15.)  Defendants were cautioned that a failure to respond to plaintiff's motion would be

19  deemed as consent to a summary grant of the motion and may result in a default judgment against

20  defendants.  (Id.)

21  Plaintiff served a copy of the motion for default judgment and the court's subsequent

22  order on defendants by mail on August 30, 2022.  (See ECF Nos. 16, 17.)  Despite this fact,

23  defendants still have not opposed plaintiff's motion or otherwise appeared in this action.  (Id.)  In

24  this default judgment motion, plaintiff seeks a principal amount of $348,577.35 plus over

25  $200,000 in prejudgment interest running from June 18, 2020, to the date of the judgment;

26  plaintiff states it will serve a separate motion for attorneys' fees, costs, and post-judgment

27

28  ───────────────

[3] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

1    interest.  (See ECF No. 12 at 12.)

2    **II.**    **LEGAL STANDARDS**

3           Pursuant to Rule 55, default may be entered against a party against whom a judgment for

4    affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R.

5    Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a

6    court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal.

7    2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to

8    grant or deny an application for default judgment lies within the district court's sound discretion.

9    Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court

10   considers the following factors:

11           1.   the possibility of prejudice to the plaintiff,
             2.   the merits of plaintiff's substantive claim and the sufficiency of the complaint;
12           3.   the sum of money at stake in the action;
             4.   the possibility of a dispute concerning material facts;
13           5.   whether the default was due to excusable neglect, and
             6.   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions
14                on the merits.

15   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

16   disfavored.  Id. at 1472.

17          As a general rule, once default is entered, well-pleaded factual allegations in the operative

18   complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

19   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam); accord Fair Housing of Marin

20   v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in

21   the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in

22   the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

23   Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

24   1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

25   2007) (stating that a defendant does not admit facts that are not well-pleaded or conclusions of

26   law); see, e.g., Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default

27   judgment may not be entered on a legally insufficient claim.").  A party's default conclusively

28

                                                      4

establishes that party's liability, but it does not establish the amount of damages.  Geddes v.

United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).

**III.    DISCUSSION**

   **A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors**

   For the following reasons, the undersigned finds that the weight of the Eitel factors

entitles plaintiff to a default judgment against defendants and recommends default judgment be

entered with respect to liability.

   1.  Plaintiff is prejudiced by defendants' non-responsiveness.

   The first Eitel factor considers whether plaintiff would suffer prejudice if default

judgment were not entered; prejudice to a plaintiff weighs in favor of a default judgment.  See

PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, because plaintiff has unsuccessfully attempted to

recover on the defaults of the 2017 and 2018 contracts and the Guaranty, and defendants and have

been silent in this matter, plaintiff would be left without any other recourse against defendants

should default not be entered.  Accordingly, the first Eitel factors favors the entry of default

judgment.

   2.  Plaintiff's breach of contract claims are meritorious and sufficiently pleaded.

   The second and third factors (the merits of the substantive claims and the sufficiency of

the complaint) are considered in tandem, due to the relatedness of the two inquiries.  The court

must consider whether the allegations in the complaint are sufficient to state a claim that supports

the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

   Plaintiff seeks recovery for breach of contract.  (ECF No. 1 at 5-6.)  Federal courts sitting

in diversity look to the law of the forum state—here, California—when making choice of law

determinations.  See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014).

Under California law, the choice of law provision in the parties' agreement will govern so long as

(1) the chosen state has a substantial relationship to the parties or their transaction, and (2) there is

any reasonable basis for the parties' choice of law.  Gramercy Inv. Tr. v. Lakemont Homes

Nevada, Inc., 198 Cal. App. 4th 903, 909 (2011).  The 2017 and 2018 contracts and the Guaranty

include provisions providing that the laws of North Carolina govern.  (See ECF Nos. 1-1 at 3, 1-4

at 4, 1-5 at 1.)  North Carolina has a substantial relationship to the parties as plaintiff's principal place of business is in North Carolina and the contracts were accepted in the state.  (ECF No. 1 at 1.)  Further, there is a reasonable basis as plaintiff, acting as the lender in the contracts, operates out of North Carolina.  (Id.)  Accordingly, the court will apply North Carolina law to the breach of contract claim.

To establish a claim of breach of contract under North Carolina law, plaintiff must show "(1) the existence of a valid contract and (2) breach of the terms of that contract."  Poor v. Hill, 138 N.C. App. 19, 26 (2000).  Plaintiff alleges GFM entered into the 2017 contract on July 14, 2017 and the 2018 contract on January 29, 2018 (signed copies are appended to the complaint).  (ECF No. 1 at 2, 5.)  Subsequent modification contracts later modified payment and interest rates to each contract.  (Id.)  Plaintiff also alleges Timofey executed a Continuing Guaranty (a signed copy is appended to the complaint) on January 29, 2018, which guarantees the full payment and performance of all of GFM's current and future obligations to plaintiff.  (Id. at 4.)  Plaintiff contends defendants defaulted on the remaining payments for the 2018 contract on October 16, 2018 and the 2017 contract on March 19, 2020.  (ECF No. 12 at 13, 15.)  Pursuant to the contracts' terms, plaintiff accelerated the balances due, took possession of the tractors, and sold the tractors for a collective price of $165,872.00.  (Id.)  Plaintiff performed all of its obligations under the contracts.  (ECF No. 1 at 4.)  Neither GFM nor Timofey attempted to cure the default.  (Id.)  Plaintiff alleges that, as of the filing of the case, GFM still owes plaintiff $33,924.27 under the 2017 contract and $314,653.08 under the 2018 contract.  (Id. at 3, 5.)

As a result, plaintiff asserts it is entitled to monetary damages, prejudgment interest, and reasonable attorneys' fees and costs, as provided for in the contracts upon default of payment. (ECF No. 12 at 12.)  Taking these well-pleaded allegations as true, the undersigned finds plaintiff has adequately pleaded breach of contract claims.  See Poor, 138 N.C. App. at 26.

3.  The amount of damages is proportional to plaintiff's harm.

Next, the court considers "the amount of money at stake in relation to the seriousness of [d]efendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

1    While the damages sought by plaintiff in its motion for default judgment is a substantial

2    sum of money, it is the same as the amount of loss and costs incurred by plaintiff.  In addition to

3    plaintiff's request for the principal amount of $348,577.35 owed under the contracts, plaintiff

4    seeks over $200,000 in accrued prejudgment interest, also provided for under the contracts.  (See

5    ECF No. 12 at 12.)  The requested award for damages is reasonable and proportional given the

6    well-pleaded allegations.  See, e.g., Coach Servs. v. YNM, Inc., 2011 U.S. Dist. LEXIS 52482, at

7    *8-9 (C.D. Cal. May 6, 2011) ("The amount of money sought by plaintiff is consistent with the

8    allegations in the [c]omplaint and the claim asserted.").  Accordingly, this factor weighs in favor

9    of entry of default judgment.

10    4.  The material facts are not in dispute.

11    The facts of this case are relatively straightforward, and plaintiff has provided the court

12    with well-pleaded allegations and documentation supporting its claims.  Specifically, plaintiff has

13    provided copies of the 2017 and 2018 contracts, and the respective modifications signed by GFM.

14    (See ECF Nos. 1, 12.)  Plaintiff additionally provided copies of the Guaranty signed by Timofey,

15    further attesting to plaintiff's claims set forth in its complaint.  (Id.)  The court may assume the

16    truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of

17    default, and thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g.,

18    Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all

19    allegations in a well-pleaded complaint are taken as true after the court clerk enters default

20    judgment, there is no likelihood that any genuine issue of material fact exists.");  accord Philip

21    Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  The undersigned

22    finds this factor favors the entry of a default judgment.

23    5.  The court sees no excusable neglect.

24    Upon review of the record before the court, the undersigned finds the default was not the

25    result of excusable neglect.  Pepsi Co, Inc., 238 F. Supp. 2d at 1177.  Defendants had ample

26    notice in this lawsuit.  On August 19, 2020 and December 17, 2020, plaintiff provided defendants

27    notices of default payment, including notices for the repossession and sale of the tractors on a

28    later date.  (See ECF Nos. 12-4, 12-9.)  On June 3, 2021, plaintiff provided defendants additional

notices of the deficient balance.  (See ECF Nos. 12-5, 2-10.)  Plaintiff served its complaint upon

defendants personally at defendant's address of record.  (See ECF Nos. 6, 7.)  Plaintiff then

served defendants by mail its motion for default judgment and the court's order providing

defendants an additional opportunity to respond to the default.  (See ECF Nos. 16, 17.)

Defendants have not filed anything in response or otherwise made an appearance in this case.

Accordingly, there is no indication defendants' default resulted from excusable neglect; this

factor favors the entry of a default judgment.

> 6.   The policy favoring disposition on the merits is outweighed by other factors.

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a

defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see

also e.g., Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

Here, although the undersigned is cognizant of the policy in favor of decisions on the

merits—that policy is unavailable here because defendants have not responded.  This factor does

not weigh against entry of default judgment.

**B.  Terms of the Judgment to be Entered**

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default on

liability against both defendants.  As to damages, the principal amount of damages corresponds to

the contracts, and so $348,577.35 is the appropriate amount of compensatory damages.  See

Shores, 2020 WL 2937801, at *7.

Prejudgment interest is a substantive part of a plaintiff's claim, and state law generally

governs the award of prejudgment interest in diversity actions.  Oak Harbor Freight Lines, Inc. v.

Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir. 2008); see also Phillips 66 Co. v. Petros Rai

Stations, LLC, 2016 U.S. Dist. LEXIS 56325, at *21-23 (E.D. Cal. April 26, 2016) ("When a

contract includes a valid choice of law provision, the court applies the law of the chosen state to

find the appropriate prejudgment interest.").  Here, North Carolina law governs this dispute as

provisions in the contracts indicate North Carolina as the governing law.  Plaintiff seeks $16.96

per day for the 2017 contract and $157.33 per day for the 2018 contract (collectively $174.29 per

day) in prejudgment interest, alleging a "continuing/default interest at the contractual rate of 18% per annum" accruing from the date requested in plaintiff's motion—June 18, 2020.[4]  (ECF No. 12 at 11, 16.)  North Carolina law provides that once breach is established, plaintiffs are entitled to interest from the date of the breach as a matter of law.  See N.C. Gen. Stat. § 24–5; see also Members Interior Construction v. Leader Construction Co., 124 N.C. App. 121, 125 (1996) (noting that the court awards prejudgment interest for breach of contract claims at the rate agreed in the contract).  Plaintiff relies on the provisions of the 2017 and 2018 contracts providing that defendants "bear an interest rate at 18% per annum" against the total obligation beginning at the date of default.  (ECF No. 12 at 14, citing ECF Nos. 12-1 at 3; 12-6 at 2.)  Plaintiff properly determined the applicable prejudgment interest to be $174.29 per day from June 18, 2020, through the date of judgment.

Plaintiff alleges the 2017 and 2018 contracts and the Guaranty allow plaintiff to recover costs and attorneys' fees relating to defendants' default.  (ECF No. 1 at 6, citing ECF Nos. 1-1 at 2; 1-4 at 3; 1-5 at 1.)  Plaintiff seeks to file a post-judgment motion within 14 days of the entry of judgment to recover costs and attorneys' fees pursuant to Rule 54(d).  (ECF No. 12 at 16-17.) Federal law governs procedural matters relating to costs and attorneys' fees.  See In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1120 (9th Cir. 1987) (noting an award for costs in federal district court is "governed by federal law, even in diversity cases"); see also In Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007) (noting federal law governs the procedure of requesting an award of attorneys' fees).  Rule 54(d) permits costs to the prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise."  See Fed. R. Civ. P. 54(d)(1); see also Buchanan v. Stanships, Inc. 485 U.S. 265, 269 (1988) (finding post-judgment motions for costs are permitted under Rule 54(d)).  Additionally, Rule 54(d) permits a prevailing party to recover attorneys' fees post-judgment "[u]nless the substantive law requires those fees to be

_____

[4] The court notes a declaration included in plaintiff's motion signed by plaintiff's litigation specialist, Tiffany Alston, indicating the dates of default were different under each contract.  This appears to be because the parties were engaged in negotiations to modify portions of each contract.  Given that plaintiff has explicitly requested prejudgment interest to be awarded from June 18, 2020 through the date of judgment, this is the date the undersigned recommends using for the calculation of prejudgment interest. (See ECF No. 12 at 12, 13, 15.)

proved at trial as an element of damages."  See Fed. R. Civ. P. 54(d)(2)(A-B) (motions for attorneys' fees are timely if "filed no later than 14 days after the entry of judgment"). Accordingly, plaintiff may file a post-judgment motion for costs and attorneys' fees within 14 days of the district court's entry of final judgment.

### RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's Motion for Default Judgment (ECF No. 12) be GRANTED;

2. Plaintiff be awarded final judgment in the amount of $348,577.35 in compensatory damages and prejudgment interest of $174.29/day from June 18, 2020, through the date of judgment; and

3. Plaintiff be granted leave to file a post-judgment motion for costs and attorneys' fees pursuant to Rule 54(d).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  October 18, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD/BH, volv.1568